Janice P. Brown (SBN: 114433)
jbrown@meyersnave.com
Suzanne K. Roten (SBN: 148533)
sroten@meyersnave.com
Nicole Ries Fox (SBN: 268819)
nriesfox@meyersnave.com
MEYERS NAVE
1999 Harrison Street, 9th Floor
Oakland, California 94612
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants
EAST BAY MUNICIPAL UTILITY DISTRICT,
CRAIG SPENCER, and LAURA ACOSTA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| SAJI PIERCE and AYRIEL BLAND,<br><br>  Plaintiffs,<br><br>  v.<br><br>EAST BAY MUNICIPAL UTILITY DISTRICT, a government agency, CRAIG SPENCER individually and LAURA ACOSTA, individually,<br><br>  Defendants. | Case No. 3:21-cv-04325-AGT<br><br>**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF INVESTIGATOR'S "UNCONSCIOUS BIAS" FINDING**<br>**[MOTION IN LIMINE NO. 3 OF 5]**<br><br>The Hon. Magistrate Judge Alex G. Tse<br><br>Complaint Filed: June 7, 2021<br>FAC Filed: December 15, 2021<br>Trial Date: May 22, 2023 |

**NOTICE OF MOTION AND MOTION *IN LIMINE***

PLEASE TAKE NOTICE that Defendants EAST BAY MUNICIPAL UTILITY DISTRICT, CRAIG SPENCER, and LAURA ACOSTA ("Defendants") move the Court, in limine, for an order prohibiting all parties, their respective counsel of record, and all witnesses on behalf of each and every party from eliciting, mentioning or referring to, inquiring into, commenting on, or attempting to suggest, either orally or by way of written testimony, in the presence or hearing of any prospective witness or the Court, at any time before or during the trial (including, without limitation, opening statement, direct or cross-examination, closing argument and otherwise), evidence relating to attorney-investigator Zaneta Seidel's findings that Defendant Craig Spencer's "unconscious bias" may have played a role in his treatment of Plaintiff Ayriel Bland.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Janice P. Brown, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

DATED: April 7, 2023

MEYERS NAVE

By: _____
JANICE P. BROWN
SUZANNE K. ROTEN
NICOLE RIES FOX
Attorneys for Defendants
EAST BAY MUNICIPAL UTILITY DISTRICT, CRAIG SPENCER, and LAURA ACOSTA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

One of the four internal investigators that Defendant EBMUD retained to thoroughly investigate Plaintiffs' claims of discrimination investigated Plaintiff Ayriel Bland's allegation that Defendant Craig Spencer had "treat[ed] Bland less favorably than he has treated [Caucasian attorney] Gunderson in terms of her onboarding, training opportunities, resources, caseload, and/or supervision … because of Bland's race." Declaration of Janice P. Brown (Brown Decl.) ¶ 5, Ex. 4, Excerpts of Confidential Investigative Report of Zaneta Seidel ("Seidel Report") at p. 2. The attorney investigator, Zaneta Seidel, issued a report that concluded that while "[a] preponderance of the evidence does not support a finding that Spencer treated Bland less favorably than Gunderson in terms of providing Bland training opportunities, resources, or a comparable workload," Spencer's "unconscious racial bias" may have played a role in the level of attention Spencer paid to Bland. *Id.* at pp. 77-80.

Throughout this litigation, Plaintiffs have referenced Seidel's "unconscious bias" finding and suggested that it may be considered as circumstantial evidence of Spencer's racial bias against Bland. *See, e.g.*, Brown Decl. ¶ 6, Ex. 5, Decl. of Ayriel Bland in Opp. to MSJ, at ¶ 79 ("Despite evidence of Mr. Spencer treating me with "unconscious racial bias" and failing to provide a timely performance plan, EBMUD's Letter issued on November 9 found that Mr. Spencer violated no District policy, including no diversity and inclusion policies."); *id.* at ¶ 89 (citing the "'unconscious racial bias' findings with no subsequent remedy" as one cause of constructive discharge). Plaintiffs should be precluded from introducing any evidence or testimony about Seidel's "unconscious bias" finding.

### II. LEGAL ARGUMENT

Each of the discrimination causes of action Plaintiffs allege in this case require them to prove that Defendants engaged in *intentional* discrimination. *See, e.g.*, *Yu v. Idaho State University*, 15 F.4th 1236, 1242 (2021) ("At the trial stage, 'the ultimate factual issue in the case' is 'whether the defendant *intentionally discriminated* against the plaintiff.'" (citations omitted)); *Collins v. Thurmond*, 41 Cal. App. 5th 879, 895 (2019) ("[T]o state a claim for violation of the

Equal Protection Clause, a plaintiff must show that the defendant *acted with an intent or purpose to discriminate against him* based upon his membership in a protected class." (citation omitted)); *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 361 (2000) (to prove a discrimination claim under the FEHA, "there must be evidence supporting a rational inference that *intentional discrimination*, on grounds prohibited by the statute, was the true cause of the employer's actions").

California and the Ninth Circuit each have well-established standard jury instructions that advise the jury how to make the determination of a defendant's intent in a discrimination case. They inform the jury of the well-settled principle that "[i]ntentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Collins*, 41 Cal. App. 5th at 895; *see, e.g.*, CACI 2500 (requiring the jury to find that the plaintiff's protected status "was a substantial motivating reason for" the defendant's adverse employment action); CACI 2507 (defining "a substantial motivating reason"); 9th Cir. Model Instr. 10.1 and 10.2 (requiring the jury to find that the defendant took the adverse employment action against plaintiff "because of the plaintiff's" protected status); 9th Cir. Model Instr. 10.3 (defining "because of"). The parties have stipulated to these definitions of intent in the proposed jury instructions submitted to the Court. *See, e.g.*, Dkt No. 135, Stipulated Instruction No. 22, 23 (agreeing to CACI 2500 and 2507 instruction); Disputed Instruction No. 28, 29 (agreeing to Ninth Cir. Model Instr. "because of" standard).

Plaintiffs have not proposed an instruction on "unconscious bias," and with good reason. None of the model instructions in California or the Ninth Circuit instruct the jury that it may consider "unconscious bias" as part of its intent inquiry. As other courts have recognized, "[a] claim of discrimination based on unconscious bias is, by its nature, not 'purposeful or intentional' and therefore inadequate to state a claim" under federal anti-discrimination laws. *Naumovski v. Norris*, 934 F.3d 200, 216 (2d Cir. 2019); *see also, e.g.*, *United States v. Casanova*, No. CR 16-2917 JAP, 2019 WL 529974, at *7 (D.N.M. Feb. 11, 2019), *aff'd*, No. 20-2159, 2022 WL 946944 (10th Cir. Mar. 30, 2022) ("unconscious bias is, by its nature, not intentional discrimination and would not satisfy Defendant's burden to prove purpose"); *Jackson v. Scripps Media, Inc.*, No. 18-00440-CV-W-ODS, 2019 WL 6619859, at *6 (W.D. Mo. Dec. 5, 2019) ("the fact that people can

make decisions based on race without consciously knowing it is a factor in their decision does not help the jury determine whether Defendant intentionally discriminated" (quoting *Benson Cooper*, 4:17-cv-00041-BP (W.D. Mo. Jan. 17, 2019) (Doc. #110-3)).

As Plaintiffs appear to recognize, instructing the jury about "unconscious bias" would create misunderstanding about the definition of intentional discrimination.[1] For the same reason, Plaintiffs should be precluded from introducing any testimony or evidence of the investigator's "unconscious bias" finding at trial. Such evidence would be irrelevant to the legal elements of Plaintiffs' causes of action (including Defendants' intent) and would only confuse the issues and mislead the jury if admitted. Numerous federal courts have excluded evidence of unconscious bias on those grounds. *See, e.g.*, *Jackson*, 2019 WL 6619859, at *5 ("When considering whether to allow expert testimony on implicit bias in cases alleging intentional discrimination, several courts have focused on the absence of any apparent connection between a person's subconscious beliefs, and that person's intent." (citing cases)); *White v. BNSF Ry. Co.*, 726 F. App'x 603, 604 (9th Cir. 2018) (excluding testimony where plaintiff "never explained how testimony regarding implicit bias would be helpful to the jury in a disparate treatment case requiring evidence of intentional discrimination"); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 84-85 (3d Cir. 2017) (finding the district court did not abuse its discretion in excluding expert testimony on implicit bias); *E.E.O.C. v. Wal-Mart Stores, Inc.*, No. CIVA 6:01-CV-339-KKC, 2010 WL 583681, at *3-4 (E.D. Ky. Feb. 16, 2010) (declining to permit expert testimony on "gender stereotyping," which "can occur subconsciously"); *Camp v. Lockheed Martin Corp.*, 1998 WL 966002, at *3 (S.D. Tex. Dec. 29, 1998) ("Testimony that unconscious age stereotyping 'potentially influenced' Lockheed Martin's decisions and that those decisions are 'potential indicators of age bias,' while perhaps of considerable interest to psychologists and sociologists, is not relevant to the issue whether Lockheed Martin intentionally discriminated against Camp because of his age.").[2]

---

[1] The Ninth Circuit has thus far "decline[d] to address whether implicit bias may be probative or used as evidence of intentional discrimination." *Yu*, 15 F.4th at 1244-45.

[2] Indeed, even Plaintiffs' human resources "expert" recognizes that under existing law, unconscious bias is not accepted as evidence of "illegal and actionable discrimination." Brown

1   Seidel's "unconscious bias" finding would also be irrelevant because none of the actions Seidel attributed to "unconscious bias" constitutes an adverse employment action. Neither Spencer's alleged statement regarding Bland's sophistication, nor the tone Spencer used with Bland, nor his "hands-off" management approach—even if caused by *intentional* discrimination—would be enough to find actionable discrimination. To allow the jury to hear about an "unconscious bias" finding with respect to these minor actions can have no bearing on any element of any cause of action before them. At a minimum, the evidence should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by a risk of unfair prejudice, confusing the issues, and misleading the jury.

Nor should Plaintiffs be permitted to cross-examine Seidel on her "unconscious bias" findings. Witness credibility is a matter for the jury, and cross-examination of Seidel about her "unconscious bias" finding will not aid that credibility determination. Nor is there any reason the jury should receive testimony from an investigator concerning how to assess bias. As Plaintiffs have elsewhere argued, the jury should be entitled to a "view the same evidence presented to the investigator" and make its own conclusion "about Spencer's intent." Plaintiffs' MSJ Opp., ECF No. 99, at p. 32.

## III.   CONCLUSION

The Court should exclude all evidence, testimony, or argument relating to the investigator's "unconscious bias" finding. Such evidence is not probative of discriminatory intent, is irrelevant, and would be more prejudicial than probative.

---

Decl. ¶ 7, Ex. 6 (Excerpts of Duffy Report) at p. 28 (offering legal opinion that "[a]nyone who knows anything about race discrimination knows that we are all guilty of 'unconscious or implicit bias' and accordingly, at least for now, the courts have not accepted it as being the same as improper disparate treatment, that is illegal and actionable discrimination.").

| | | |
|---|---|---|
| DATED:  April 7, 2023 | | **MEYERS NAVE** |
| | By: | _/s/ Janice P. Brown_ |
| | | JANICE P. BROWN |
| | | SUZANNE K. ROTEN |
| | | NICOLE RIES FOX |
| | | Attorneys for Defendants |
| | | EAST BAY MUNICIPAL UTILITY DISTRICT, CRAIG SPENCER, and LAURA ACOSTA |

5333376.1

P. Bobby Shukla SBN 229736
**SHUKLA LAW P. C.**
345 Franklin Street
San Francisco, California 94102
Phone: (415) 847-3983
Email: bshukla@shuklalawfirm.com

**ALEXANDER MORRISON + FEHR LLP**
J. Bernard Alexander, III SBN 128307
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Phone: (310) 394-0888 | F: (310) 394-0811
Email: balexander@amfllp.com

Attorney for Plaintiffs
SAJI PIERCE and AYRIEL BLAND

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAJI PIERCE and AYRIEL BLAND,<br><br>   Plaintiffs,<br><br>   v.<br><br>EAST BAY MUNICIPAL UTILITY DISTRICT, a government agency, CRAIG SPENCER individually and LAURA ACOSTA, individually,<br><br>   Defendants. | Case No. 3:21-cv-04325-AGT<br><br>**PLAINTIFFS SAJI PIERCE AND AYRIEL BLAND'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF INVESTIGATOR'S "UNCONSCIOUS BIAS" FINDING**<br>**[MOTION IN LIMINE NO. 3 OF 5]**<br><br>The Hon. Magistrate Judge Alex G. Tse<br><br><br>Complaint Filed: June 7, 2021<br>FAC Filed: December 15, 2021<br>Trial Date: May 22, 2023 |

## I. SUMMARY OF ARGUMENT

Defendants seek to selectively exclude evidence of findings by its <u>own</u> investigator that substantiated, in part, that Defendant Craig Spencer treated Plaintiff Bland less favorably than her White counterpart, Anna Gunderson. Despite making findings of differential treatment based on race, the investigator concluded that this disparity reflected "*unconscious*" bias. Therefore, Defendant EBMUD's Notice of Determination concluded that Spencer did not violate any of its policies. The District adopted the findings in its November 9, 2020 Notice of EEO Complaint Determination ("the Determination").

In seeking to rely on these finding to refute Plaintiffs' claims, Defendants also seek to selectively parse out findings unfavorable to them. However, they provide no logical or legal justification for doing so. First, whether or not Spencer's conduct was intentional and discriminatory are questions of fact for the jury, to be determined based on the totality of the evidence. The jury certainly is not bound by the District's hand-picked investigator's factually unsupported determination as to intent. To the contrary, the suspect finding of "unconscious" bias serves as a barometer of the investigator's independence and credibility. That said, the entirety of the investigator's determination is relevant to prove Defendant EBMUD's:

(1) <u>Ratification</u>: Despite findings of Spencer's disparate treatment based on race, by its own admissions, Defendant EBMUD took no appropriate corrective action to protect Bland from further harm and continuing disparate treatment by Spencer;

(2) <u>Discriminatory and retaliatory intent</u>: Secretary for the District, Rischa Cole (who oversaw the investigation and signed the Notice of Determination), conceded that treating an employee differently, even if based on unconscious bias is not "compliant with EEO policy" See Exh. I, Shukla Decl., Cole Depo, in direct contradiction to the unsubstantiated conclusion stated the District's Notice of Determination that Spencer did <u>not</u> violate EBMUD policies.; and

(3) <u>Failure to Prevent Discrimination and Retaliation</u>:  the District's ongoing failure to protect Bland from persistent disparate treatment by Spencer, which created intolerable work conditions and reasonably led Bland to lose hope that EBMUD's top management would protect her, resulting in a constructive discharge. See *Thompson v. Tracor Flight Sys.* (2001) 86 Cal.App.4th 1156, 1165 (employee's testimony that as the situation with her supervisor worsened, "she began to lose hope that her corporate supervisors could effectively come to her aid," was relevant to constructive discharge).

II.     STATEMENT OF FACTS

An investigation was conducted regarding Plaintiff Ayriel Bland's complaints that Defendant Craig Spencer subjected Plaintiff to less favorable treatment based on race. Investigator, Zaneta Seidel, was retained "to thoroughly investigate Plaintiffs' claims of discrimination" (see page 1 of Defendant's motion). Seidel investigated whether Spencer treated Bland less favorably than Gunderson in terms of onboarding, training opportunities, resources, caseload, and supervision. Seidel "Substantiated in part; Unsubstantiated in part," concluding that "[Spencer] seemed less attentive to [Bland] in terms of his supervision and welcoming of [Bland] on his team than he was with the [Gunderson]," citing several examples, e.g., (1) that Spencer expressed concern about ensuring Gunderson "had everything she needed" but did not exhibit similar concern for Bland, adding "[Spencer's] actions seem to have led [Bland] to wonder if [Bland was] a priority for him and to reasonably conclude that race was a factor in why [Bland was] not a priority to him"; (2) that witnesses corroborated that Spencer left without Bland for a deposition they were attending together, an over act "potentially motivated by Respondent's unconscious racial bias"; (3) Spencer's different and harsher treatment of Bland, as compared to Gunderson, when they asked the same question about Covid and protecting their families from exposure. *Id.* See Exh. G to Shukla Decl.

Despite this evidence, and without logical explanation, Seidel concluded that "there was no evidence to support that this differential treatment was due to any objective factor" and attributed the

disparate treatment to "<u>unconscious racial bia</u>s []as a motivating factor. " [underlining added]  Seidel's Determination added, "While the investigator did not find any direct evidence of racial bias, the investigator did note that the only difference between [Bland] and [Gunderson] was race and that [Spencer's] *unconscious* racial bias may have been a motivating factor in his interactions with [Bland]" *Id.* [Italics added]  Inexplicably, and counter-intuitively, Seidel concluded that Spencer did not violate EBMUD policies.  A November 9, 2020, Determination issued by EBMUD's Secretary of the District Rischa Cole, adopted Seidel's findings.

On November 14, 2020, after receiving the Determination, Bland emailed General Manager Clifford Chan that the District was creating a hostile work environment for her. On November 17, 2020, Bland spoke to Chan by telephone about her concerns as reflected in  the Determination's findings, during which Chan took detailed notes. See Exh. H, Shukla Decl. Bland also informed Chan of the high levels of stress Spencer's ongoing disparate treatment was  causing . Bland also expressed concerns about Chan's suggestion that she report to another Assistant General Counsel, Fred Ethridge, because Etheridge still reported to Spencer and continued to assign and review Bland's work. *Id.* The District took no action to address Bland's concerns. See Exh. B, Shukla Decl., Young Depo; Exh. C, Shukla Decl., Spencer Depo. Due to Defendant EBMUD's failure to protect her from ongoing, intolerable working conditions based on racial discrimination, despite findings of its own investigation, Bland felt she had no choice but to resign her employment after less than two years.

### III. LEGAL ARGUMENT

#### A. Defendant EBMUD Ratified Spencer's Racial Misconduct By Failing to Take Appropriate Corrective Action to Address the Finding of Disparate Treatment.

Following receipt of the Determination that Spencer had treated Bland differently based on race, the District's Board of Directors (to whom Spencer was a direct report) failed to take appropriate corrective action. Notwithstanding the Determination, Board President Marguerite Young testified that the Board conducted no investigation into Spencer's management practices and regardless of any

concern that Bland would quit, had no plan to address Spencer's conduct. Nor was any action contemplated to address potential hostility toward minorities in the Office of General Counsel ("OGC"). Exh. B, Shukla Decl., Young Depo. Nor was Spencer subjected to discipline or any "adverse consequence," as confirmed by Spender. Exh. C, Shukla Decl., Spencer Dep. Not surprisingly, Spencer admitted that he had no concerns about racial diversity in the OGC, even after African American employees Pierce and Bland quit. *Id.*

The Board's failure to take corrective action to address Spencer's disparate treatment—which could only be explained by race—is probative of its discriminatory and retaliatory intent. Once on notice, the Board's failure to "criticize, censure, terminate, suspend or otherwise sanction or take any action" is indicative of ratification. See *Iverson v. Atlas Pacific Engineering* (1989) 143 Cal.App.3d 219, 228 (failure to "criticize, censure, terminate, suspend or otherwise sanction or take any action" after notice of tortious conduct creates liability for the employee's wrongful conduct). Regardless of Seidel's soft pass, in deeming Spencer's actions toward Bland as "unconscious bias," this did <u>not</u> relieve Defendant EBMUD from its duty to take corrective action to protect Bland from further disparate treatment. Indeed, Cole herself affirmed this when she testified that treating an employee differently based on unconscious bias is not "compliant with the EEO policy" "because bias should not be a part of how we interact with staff and how we work." See Exh. I, Shukla Decl., Cole Depo at 139:12-140:23.

### B. Defendant EBMUD's False and Contradictory Determination that Spencer Did Not Violate Policy Serves as Evidence of Discriminatory and Retaliatory Intent.

Despite finding that Spencer treated Bland less favorably, the Determination concluded that Spencer did not violate EBMUD policies. Cole, the person who oversaw the investigation and signed the Notice of Determination, testified at deposition that treating an employee differently, even if based on unconscious bias, is <u>not</u> "compliant with the EEO policy." *Id.* Board President Marguerite Young also testified that the District does not allow unconscious bias against African-Americans. See Exh. B to Shukla Decl., Young Depo. Thus, the false determination that Spencer did not violate EBMUD policies

5

is highly probative of Defendant EBMUD's discriminatory and retaliatory intent. See *Mendoza v. Western Med. Ctr. Santa Ana* (2014) 222 Cal.App.4th 1334, 1344 ("The lack of a rigorous investigation by Defendant is evidence suggesting that Defendant did not value the discovery of the truth so much as a way to clean up the mess that was uncovered when [Plaintiff] made his complaint."); see also *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 278-283.

### C. Defendant EBMUD's Failure to Take Corrective Action to Prevent Further Disparate Treatment Is Directly Relevant to Her Claim of Constructive Discharge

Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Consequently, constructive discharge is legally regarded as a firing rather than a resignation. *Zilmer v. Carnation Co.* (1989) 215 Cal. App.3d 29, 38-39. "[A]n employee who is forced to resign due to actions and conditions so intolerable or aggravated at the time of his resignation that a reasonable person in the employee's position would have resigned, and whose employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact upon the employee and could have remedied the situation, but did not, is constructively discharged." *Id.*; see also *Brady v. Elixir Industries* (1987) 196 Cal. App.3d 1299, 1306. Courts emphasize the need to view the evidence in the "proper context." See *Thompson v. Tracor Flight Sys.* (2001) 86 Cal.App.4th 1156, 1165 (employee's testimony that as the situation with her supervisor worsened, "she began to lose hope that her corporate supervisors could effectively come to her aid," was relevant to intolerable working conditions); see also *Turner v. Anheuser-Busch, Inc.* 7 Cal.4th 1238, 1244-1245 (a continuous course of actions constituting unfair and harsh criticism or embarrassment, uncorrected by management, can constitute objectively intolerable working conditions). Here, Bland felt she had no choice but to resign after Defendant EBMUD failed to protect her from ongoing race-based intolerable working conditions despite the findings of its own investigation.

## IV. CONCLUSION

For the reasons stated herein, the Court should deny Defendant's motion *in limine* No. 3.

DATED: May 3, 2023

**SHUKLA LAW P.C.**

**ALEXANDER MORRISON + FEHR LLP**

By: */s/ P. Bobby Shukla*
  P. Bobby Shukla
  Attorney for Plaintiffs
  SAJI PIERCE and AYRIEL BLAND